UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE HERNANDEZ; KEITH GURGUI;
RASHETA BUNTING; KAREN LUXTON
GOURGEY, ED.D.; DISABILITY RIGHTS
NEW YORK; NATIONAL FEDERATION
OF THE BLIND OF NEW YORK STATE,
INC.; AMERICAN COUNCIL OF THE
BLIND OF NEW YORK, INC.; and
CENTER FOR INDEPENDENCE OF THE
DISABLED, NEW YORK,

                 Plaintiffs,

   -against-

THE NEW YORK STATE BOARD OF
ELECTIONS, DOUGLAS A. KELLNER,
Co-Chair and Commissioner, ANDREW
SPANO, Commissioner, PETER S.
KOSINSKI, Co-Chair and Commissioner,
TODD D. VALENTINE, Co-Executive
Director, and ROBERT A. BREHM, Co-
Executive Director, in their official capacities
at the New York State Board of Elections,

            Defendants.

CASE NO: _____

**COMPLAINT**

## PRELIMINARY STATEMENT

1.     Plaintiffs challenge the New York State Board of Elections ("NYS BOE") and, in their official capacities, its Commissioners, Douglass A. Kellner, Andrew Spano, and Peter S. Kosinski, and Co-Executive Directors, Todd D. Valentine and Robert A. Brehm, for operating an Absentee Voting program that is inaccessible to New Yorkers with disabilities.

2.     The impact of the novel coronavirus SARS-CoV-2 ("COVID-19") pandemic in the United States is being disproportionately felt by New Yorkers, with confirmed COVID-19

cases at a rate far greater than any other state and with more than a third of all domestic COVID-19 related deaths in New York.

3.      New York's Governor Cuomo responded to the threat of COVID-19 to voters by expanding the Absentee Voting program to allow all voters in New York State to request an absentee ballot for the June 23, 2020 Primary and Special Elections.

4.      New York's Absentee Voting program requires voters to fill out a paper ballot using a pen or marker and to return the ballot by mail.

5.      Plaintiffs are unable to independently mark a paper ballot due to their disabilities, including blindness, low vision, and physical disabilities such as paralysis ("print disabilities").

6.      The Absentee Voting program provides no alternatives to accommodate individuals with print disabilities who vote from home.

7.      Individuals with print disabilities must choose between their health and their right to vote because they are forced to go to their board of election to privately and independently mark their ballot.

8.      The New York State Constitution guarantees a private ballot. "All elections by the citizens . . . shall be by ballot, . . . provided that secrecy in voting be preserved.  The legislature shall provide for identification of voters through their signatures in all cases . . . save only in cases of illiteracy or physical disability." N.Y. Const. art. II, § 7; s*ee also* Help America Vote Act of 2002, Pub. L. 107–252 § 301, 116 Stat. 1666, 1704 (*codified as amended at* 52 U.S.C. § 21081) (enshrining the right to review and change one's ballot privately and independently in federal elections).

9.      New York can make its Absentee Voting program accessible to voters with print disabilities to vote from home, as other states have done.

10. Defendants are aware of the need to make the Absentee Voting program accessible and have not done so.

## JURISDICTION AND VENUE

11. Plaintiffs' federal claims are made pursuant to Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq*., and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 *et seq*..

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

13. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

14. Venue is appropriate in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions that gave rise to Plaintiffs' claims occurred within this District.

## PARTIES

15. PLAINTIFF JOSE HERNANDEZ is registered to vote in New York.

16. Mr. Hernandez resides in the Bronx, New York.

17. Mr. Hernandez has a C-5 spinal cord injury and is classified as a person with tetraplegia with limited movement of his hands.

18. Mr. Hernandez has voted in past elections and plans to vote in the June 23, 2020 Primary Election and in subsequent federal, state and local elections.

19. PLAINTIFF KEITH GURGUI is registered to vote in New York.

20. Mr. Gurgui resides in Lake Katrine, New York.

21. Mr. Gurgui has a C-4 spinal cord injury and is paralyzed from the neck down with limited movement of his shoulders.

22.     Mr. Gurgui has voted in past elections and plans to vote in the June 23, 2020 Primary Election and in subsequent federal, state and local elections.

23.     PLAINTIFF RASHETA BUNTING is registered to vote in New York.

24.     Ms. Bunting resides in Brooklyn, New York.

25.     Ms. Bunting has low vision and does not have enough vision to read, mark, and sign a standard print ballot without assistance.

26.     Ms. Bunting has voted in past elections and plans to vote in the June 23, 2020 Primary Election and in subsequent federal, state and local elections.

27.     PLAINTIFF KAREN LUXTON GOURGEY ED.D., is registered to vote in New York.

28.     Dr. Gourgey is the Chair of the Executive Board of the New York State Commission for the Blind.  However, she appears in this case in her individual capacity, and all opinions she expresses in this case are her own.

29.     Dr. Gourgey lives in Manhattan.

30.     Dr. Gourgey is totally blind and a member of the American Council of the Blind of New York, Inc.

31.     Dr. Gourgey is registered to vote, and eligible to vote in the June 2020 primary and other future elections.

32.     PLAINTIFF DISABILITY ADVOCATES, INC. is an independent non-profit corporation organized under the laws of the State of New York. Disability Advocates, Inc. is authorized to conduct business under the name Disability Rights New York ("DRNY").

33.     DRNY is a Protection and Advocacy system ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. §

15041 *et seq.*, the Protection and Advocacy for Individuals with Mental Illness Act of 1986

("PAIMI Act"), 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of Individual Rights

Act ("PAIR Act"), 29 U.S.C. § 794e *et seq.*, with offices in the State of New York located at: 25

Chapel Street, Suite 1005, Brooklyn, NY 11201; 725 Broadway, Suite 450, Albany, NY 12208;

and 44 Exchange Blvd., Suite 110, Rochester, NY 14614.

34.     As New York State's Protection & Advocacy system, DRNY is specifically

authorized to pursue legal, administrative, and other appropriate remedies or approaches to

ensure the protection of, and advocacy for, the rights of individuals with disabilities. 42 U.S.C. §

15043(a)(2)(A)(i); N.Y. Exec. Law § 558(b).

35.     Pursuant to the authority vested in it by Congress to file claims of rights violations

on behalf of individuals with disabilities, DRNY brings claims on behalf of individuals with

disabilities, including the individuals named herein who are seeking or may seek the right to vote

using an accessible absentee ballot in the June 23, 2020 Primary Election, and for all future

elections involving the use of the Absentee Voting program.

36.     PLAINFIFF THE NATIONAL FEDERATION OF THE BLIND OF NEW

YORK STATE, INC. ("NFB-NY") is the New York affiliate of the National Federation of the

Blind, an organization of individuals who are legally blind. NFB-NY is a 501(c)(3) non-profit

corporation duly organized under the laws of the State of New York and headquartered in

Buffalo, New York. The organization promotes the vocational, cultural and social advancement

of the blind; works to achieve the integration of the blind into society on a basis of equality with

the sighted; and works to improve the overall condition and standard of living of the blind. NFB-

NY has many blind members, including Rasheta Bunting and Raymond Wayne, who are

registered to vote in New York and wish to vote absentee privately and independently, on the same terms as all other voters.

37.     PLAINTIFF AMERICAN COUNCIL OF THE BLIND OF NEW YORK, INC. ("ACBNY") is New York's largest consumer organization of and for people who are blind. ACBNY is the New York State affiliate of the American Council of the Blind.  Its purpose is to support and promote the educational, vocational and social advancement of blind persons.  Its members are blind and deaf-blind, and are qualified individuals with disabilities within the meaning of all applicable statutes.  ACBNY has many blind members who are registered to vote in New York and wish to vote absentee privately and independently, on the same terms as all other voters, including Ian Foley, who has registered to vote absentee at every New York election.

38.     PLAINTIFF CENTER FOR INDEPENDENCE OF THE DISABLED, NEW YORK ("CIDNY") is an independent living center serving persons with all kinds of disabilities throughout New York City.  Its mission is to enhance opportunities for all people with disabilities to direct their own lives.  CIDNY has numerous constituents and consumers who are registered to vote in New York but cannot participate in New York's Absentee Voting program on an equal and independent basis, including Yvetta Scott, who is legally blind.  CIDNY's constituents and consumers are qualified individuals with disabilities within the meaning of all applicable statutes.

39.     CIDNY's mission includes advocating for the right of people with disabilities to vote privately and independently.  CIDNY has expended resources assisting its consumers to apply for absentee paper ballots and must assist some of those consumers in completing those paper absentee ballots because they are inaccessible to people with disabilities.

6

40.    CIDNY has expended and anticipates that it will continue to expend resources responding to the barriers created by Defendants' inaccessible Absentee Voting program.

41.    DEFENDANT NEW YORK STATE BOARD OF ELECTIONS ("NYS BOE") is the State agency responsible for managing and supervising elections in New York State.

42.    NYS BOE is responsible for ensuring that New York operates elections in conformity with state and federal law, including Title II of the ADA and Section 504.

43.    NYS BOE is a public entity under Title II of the ADA.

44.    NYS BOE receives federal financial assistance in many forms, including, but not limited to, direct grants of assistance to develop, certify and maintain voting.

45.    DEFENDANT DOUGLAS A. KELLNER, sued in his official capacity, is the Co-chair and Commissioner of the NYS BOE.

46.    DEFENDANT ANDREW SPANO, sued in his official capacity, is the Commissioner of the NYS BOE.

47.    DEFENDANT PETER S. KOSINSKI, sued in his official capacity, is the Co-chair and Commissioner of the NYS BOE.

48.    DEFENDANT TODD D. VALENTINE, sued in his official capacity, is the Co-Executive Director of the NYS BOE.

49.    DEFENDANT ROBERT A. BREHM, sued in his official capacity, is the Co-Executive Director of the NYS BOE.

### STATEMENT OF FACTS

**Voting Procedures in New York**

50.    Absentee voting in New York is generally limited to voters who are:

a.     Absent from their county or, if a resident of New York City, absent from the City, on Election Day.

b.     Unable to appear at the polls due to temporary or permanent illness or disability; or because they are a primary care giver of one or more individuals who is ill or physically disabled.

c.     A resident or patient of a Veterans Health Administration Hospital.

d.     Detained in jail awaiting Grand Jury action or confined in prison after conviction for an offense other than a felony.

51.     As part of the State's ongoing response to the COVID-19 pandemic, Governor Cuomo recently issued a series of executive orders modifying the New York State Absentee Voting program.

52.     On April 9, 2020, Governor Cuomo issued Executive Order number 202.15, providing that the criterion of "temporary illness" includes the potential for contraction of the COVID-19 virus for any election held on or before June 23, 2020.

53.     This order expanded access to an absentee ballot to all New York State residents who apply for one.

54.     Executive Order 202.15 also allows voters to submit an electronic application for an absentee ballot for any election held on or before June 23, 2020.

55.     On April 24, 2020, Governor Cuomo issued Executive Order 202.23, which provides that all eligible voters will be sent an absentee ballot application form with a postage paid return option, in addition to continuing to allow voters to request an absentee ballot over the phone or online.

56.     Discussing this executive order in a press conference on April 24, 2020, Governor Cuomo stated, "It makes no sense to me to tell people 'You have to put your life at risk, violate social distancing to come out to vote.' So we passed an executive order that said you can vote by absentee."

57.     On May 1, 2020, Governor Cuomo issued Executive Order 202.26, further expanding access to the Absentee Voting program by providing a paid postage return envelope with absentee ballots for the election to be held on June 23, 2020.

58.     Executive Order 202.26 also states that "the board of elections shall provide and maintain, in its office, a voting system that is accessible for voters wishing to mark their ballot privately and independently, and provided that availability of this service shall be posted on the website of each board of elections."

59.     The accessible voting system referenced in Executive Order 202.26 is a Ballot Marking Device ("BMD"), and is designed to enable people with disabilities who are voting in person to mark their ballots privately and independently.

60.     BMDs provide accessibility features for voters with print disabilities, including disabilities that prevent a person from marking a paper ballot by hand, but only if they travel in person to a county board of elections office or polling place.

61.     On information and belief, most, if not all, of the county board of elections offices are closed to the public to avoid the spread of COVID-19, requiring individuals who want to vote early to make an appointment or otherwise specially arrange for use of the BMD to vote.

62.     Defendants provide no accessible means for voters with print disabilities to receive, mark, or submit an absentee ballot privately and independently from home.

9

**The Need for Accessible Absentee Ballots**

63.    In light of COVID-19, it is reasonably expected that the vast majority of voters will heed the Governor's advice and exercise the option to vote by absentee ballot, making the need for implementation of an accessible Absentee Voting program more pressing than ever.

64.    New York State is at the epicenter of the COVID-19 pandemic in the United States.

65.    In recognition of the risk of spread of COVID-19, New York's Governor Andrew Cuomo has issued a stay-at-home order through May 28 and a state of emergency order through at least June 13.

66.    Public health and government officials consider social distancing critical to prevent the spread of COVID-19.

67.    Requiring people with print disabilities to travel to a board of elections office to use a BMD or to seek in-person assistance from others to complete their absentee ballots puts them at risk of COVID-19 infection. *See Coronavirus Disease 2019 (COVID-19): People with Disabilities*, Centers for Disease Control and Prevention ("CDC"), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html (last visited May 21, 2020).

68.    The risk of contracting COVID-19 is particularly acute for people who are at high risk of serious complications or death from COVID-19, including older adults, those with immune disorders, heart, lung, kidney, or liver disease, diabetes, chronic lung disease (including chronic obstructive pulmonary disease ("COPD")), asthma, or obesity. *See Coronavirus Disease 2019 (COVID-19): Groups at Higher Risk for Severe Illness*, CDC,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html

(last visited May 21, 2020).

69.     Individuals, such as Plaintiffs, who require assistance to fill out and sign paper forms cannot both socially distance themselves from others and vote absentee in New York.

70.     By requiring Plaintiffs to come into close contact with others to assist them in reading, completing and signing the absentee ballot, Defendants put individuals with print disabilities at unnecessary risk of contracting COVID-19.

71.     People who need but cannot access assistance because of COVID-19 cannot vote from home and must either give up their right to vote or unnecessarily risk contracting COVID-19 by traveling to their polling places or board of election to vote in person.

**Mechanisms Available to Provide Accessible Absentee Ballots**

72.     Accessible alternatives to paper absentee ballots exist and are used by other states.

73.     Implementing accessible alternatives to paper absentee ballots would afford Plaintiffs an equal opportunity to vote privately and independently via absentee ballot.

74.     New York State has already implemented an e-mail ballot delivery system pursuant to its obligation under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. § 20301 *et. seq.*, Pub. Law 111–84—OCT. 28, 2009.

75.     On information and belief, Defendants currently provide UOCAVA ballots by email to military and overseas voters in electronic Adobe PDF format.

76.     Adobe PDF documents can be made accessible and electronically fillable, automatically when the PDF is created, or can be remediated with tools included in Adobe.

77. Faced with a similar inaccessible absentee ballot problem, Michigan earlier this month agreed to modify its UOCAVA voting system to make it available to individuals with print disabilities.

78. As an interim fix, Michigan made its UOCAVA PDF ballots accessible and available to blind voters in Michigan—in addition to military and overseas voters.

79. After Michigan agreed to make its absentee ballots accessible, it was able to offer accessible absentee ballots electronically to voters with disabilities within days—and in time for a May 5, 2020 election in that state. Stipulated and Consent Order Resolving Plaintiffs' Motion for Temporary Restraining Order (ECF No. 24), *Powell et al. v. Benson et al.,* Case No. 2:20-Cv-11023-GAD-MJH (E.D. Mich. May 1, 2020).

80. Implementing this interim solution imposed minimal financial costs on Michigan, and would impose similarly minimal costs on Defendants, because it can be implemented quickly and using only widely available commercial software.

81. Making UOCAVA absentee ballots available to all individuals with print disabilities could be implemented in time to provide improved access for voters with print disabilities in New York for the June 23, 2020 primary.

82. On information and belief, until recently NYS BOE used the Scytl Secure Electronic Voting ("Scytl") system to deliver electronic UOCAVA ballots to members of the military and overseas citizens.

83. Scytl includes accessibility options for voters with print disabilities.

84. Scytl made it possible to not only receive, but mark and securely submit a ballot electronically, obviating the need to print and return a ballot by mail.

85.     However, Defendants did not allow voters with print disabilities who were not members of the military or residing overseas to use the Scytl system to vote absentee.

86.     By ceasing to offer accessible, electronically fillable Scytl ballots, Defendants have made their UOCAVA system less accessible to military and overseas voters with print disabilities, in spite of the ADA and Section 504 requirements applicable to those ballots.

87.     The State of Maryland developed an online ballot marking tool that allows voters to view and mark their absentee ballots on their computers.

88.     Maryland created the tool to work with screen access software, and has extensively tested the tool's usability for individuals with a variety of disabilities.

89.     In the November 2014 election, more than 1,700 Maryland voters with disabilities used the tool to mark their voting selections on their computers, review a summary screen showing their selections, and print out their ballots with their selections marked.

90.     On information and belief, Maryland shares its online ballot marking tool technology with other states at no charge.

91.     Numerous other states provide accessible electronic absentee ballot marking tools using commercially available systems that allow voters to receive ballots online or by email, mark ballots on their computers using assistive technology, and return ballots via online submission, email, or mail.

**Communications with Defendants**

92.     Plaintiffs and the disability community have requested that the State Board of Elections implement an accessible Absentee Voting program.

93.     In or about September 2019, the National Federation of the Blind submitted a letter to Defendants reminding them that the ADA and Section 504 require implementation of

13

an accessible absentee ballot system to ensure that voters with disabilities have an equal opportunity to cast their ballots privately and independently, and provided information on accessible systems that are available. Defendants did not respond to this letter.

94. On or about April 21, 2020, the American Council of the Blind, Inc., the American Council of the Blind of New York, Inc., the National Center on Independent Living, New York Association on Independent Living, Ian Foley, and Kerri Regan filed a Complaint with the U.S. Department of Justice about the mail-in Absentee Voting program which Governor Andrew Cuomo authorized for the June 23, 2020 primary election via Executive Order 202.15. The complaint explained why paper absentee ballots are inaccessible and requested that the Department take immediate action to assist Defendants in developing non-discriminatory voting programs before voters with disabilities are excluded from equal participation in the 2020 election process.

95. On April 15, April 24, and May 1, 2020, DRNY held a series of virtual roundtable discussions with New Yorkers regarding absentee voting and accessibility.

96. DRNY received many complaints from voters who will not be able to vote using an absentee ballot under the limitations of the current Absentee Voting program.

97. On May 5, 2020, DRNY requested that Defendants implement an online absentee ballot delivery and marking system and a consistent protocol for requesting disability accommodations in the voting process in advance of the June 23, 2020 elections.

98. On May 14, 2020, CIDNY wrote to Defendants expressing concern about the inaccessibility of paper absentee ballots, and about the need to take additional measures to ensure that voters with disabilities are not disenfranchised because of the COVID-19 pandemic.

99.     On May 15, 2020, DRNY again wrote Defendants to advocate for access to the Absentee Voting program for New Yorkers who are unable to benefit from this program because of their disabilities.

100.    On May 19, 2020, Defendants responded to DRNY by letter. Defendants stated that, "In relation to 'at home' ballot marking for voters with disabilities, SBOE [NYS BOE] is currently working on solutions that are consistent with New York law and that address various security concerns."

101.    On May 20, 2020, Defendants' counsel told DRNY that for the June 2020 Election, voters with print disabilities who need an accommodation to vote privately and independently must go to a local board of election if they want to mark their paper absentee ballot using a BMD.

102.    Defendants have failed to change the Absentee Voting program despite Plaintiff's efforts to resolve the inaccessible Absentee Voting program without litigation.

**Individual Plaintiffs' Need for Accessible Absentee Voting**

103.    PLAINTIFF HERNANDEZ is a person with a C-5 spinal cord injury and is classified as having tetraplegia with limited movement in his hands.

104.    Mr. Hernandez uses a wheelchair to ambulate.

105.    Mr. Hernandez uses a computer to send out emails, complete forms, take phone calls from work, and use basic social media.

106.    Mr. Hernandez is able to use his computer independently because he uses a trackball mouse and a voice dictation program that allows him to write emails, complete reports, complete PDFs and other forms, and to dictate simple messages to friends.

107. Mr. Hernandez wants to vote in the June 2020 election using an absentee ballot because of the COVID-19 pandemic.

108. Mr. Hernandez is not able to go to his physical polling location in the upcoming election because of the health risks of COVID-19.

109. Mr. Hernandez is unable to vote privately and independently using the paper absentee ballot because of his disability.

110. Mr. Hernandez requires an accessible absentee ballot delivered, marked and returned electronically to vote privately and independently.

111. PLAINTIFF GURGUI is a person with a C-4 spinal cord injury and is paralyzed from the neck down with limited movement of shoulders.

112. Mr. Gurgui uses a wheelchair to ambulate.

113. Mr. Gurgui uses a computer to send out emails, complete PDFs and other forms, take phone calls, join virtual meeting and events, and use social media.

114. Mr. Gurgui is able to use his computer independently because he uses technologies that enable him to scroll, drag, and click on content using specialized eyeglasses that track his eye movement, speech-to-text software, and other programs and devices.

115. Mr. Gurgui wants to vote in the June 2020 election using an absentee ballot because of the COVID-19 pandemic.

116. Mr. Gurgui is not able to go to his physical polling location in the upcoming election because of the health risks of COVID-19.

117. Mr. Gurgui is unable to vote privately and independently using the paper absentee ballot because of his disability.

16

118.    Mr. Gurgui requires an accessible absentee ballot delivered, marked and returned electronically to vote privately and independently.

119.    PLAINTIFF BUNTING is a person with low vision.

120.    Because of her vision disability, Ms. Bunting is unable to read standard print or to identify the proper location for a signature on standard print documents.

121.    Ms. Bunting uses a computer with screen reader assistive technology to read, fill out, and sign accessible electronic documents.

122.    Ms. Bunting recently had COVID-19 and is concerned about spreading the virus or being exposed to the virus again.

123.    Ms. Bunting would like the option of voting absentee privately and independently from her home, as allowed by New York law, in the upcoming elections.

124.    Ms. Bunting has requested accessible absentee ballots from Defendants and has been told they would not be provided, but that she should ask a third party to help her mark the ballot.

125.    PLAINTIFF GOURGEY is a resident of Manhattan.

126.    Dr. Gourgey is totally blind.

127.    Because of her vision disability, Dr. Gourgey is unable to read or fill out a paper absentee ballot.

128.    Dr. Gourgey is the recently retired Director of the Computer Center for Visually Impaired People, formerly of Baruch College. She regularly uses a computer and smartphone with assistive technology to read, fill out, and sign accessible electronic documents.

129.    Dr. Gourgey has applied for an absentee ballot and would like the option of voting absentee privately and independently from her home, as allowed by New York law.

130.    Defendants' failure to meet their obligations to provide Plaintiffs with an equal opportunity to vote absentee constitutes discrimination against them, and is an ongoing and continuous violation of the ADA and its implementing regulations and Section 504.

**FIRST CLAIM FOR RELIEF**
**TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12131, *et seq.***

131.    Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs as if specifically alleged herein.

132.    Title II of the ADA, 42 U.S.C. §§ 12131 *et seq.*, guarantees individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

133.    Title II mandates, inter alia, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

134.    In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

135.    Furthermore, such public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including

applicants, participants, companions, and members of the public, an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity." 28 C.F.R. § 35.160.

136.    The ADA regulations provide that "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities."  28 C.F.R. § 35.160(b)(2).

137.    To be effective, the "auxiliary aids and services must be provided in […] such a way as to protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.160(b)(2).

138.    Auxiliary aids and services specifically include "screen reader software; magnification software; optical readers; … [and] accessible electronic and information technology." 28 C.F.R. § 35.104.

139.    Defendant NYS BOE is an agency of the State of New York, which is a public entity under Title II of the ADA. Individual Defendants are sued in their official capacities as those responsible for carrying out the operations of Defendant NYS BOE.

140.    Absentee voting is a service, program, or activity provided by Defendants.

141.    Individual Plaintiffs are individuals with disabilities under the ADA.

142.    Organizational Plaintiffs NFB-NY, ACBNY, and CIDNY have members who are qualified individuals with disabilities under the ADA.

143.    Organizational Plaintiff DRNY is statutorily authorized to represent individuals with disabilities under the ADA.

144.    Individual Plaintiffs are registered to vote in New York and intend to vote in upcoming elections, including the June 23, 2020 election, and are thus qualified individuals entitled to the protections of the ADA.

145.    Accessible absentee ballot systems are readily available to Defendants and allow independent, private absentee voting for people with print disabilities.

146.    Defendants have failed to meet their obligations to provide voters with disabilities with an opportunity to vote absentee that is equal to the opportunity provided to other voters.

147.    By failing to implement a readily available, accessible absentee voting system, Defendants have refused to provide an auxiliary aid or service necessary to allow Plaintiffs to vote absentee as effectively as voters without disabilities.

148.    During the current pandemic, implementing accessible absentee voting would enable New Yorkers with print disabilities to vote privately and independently without compromising their health or even their lives by risking exposure to COVID-19.

149.    Accordingly, Defendants have discriminated against Plaintiffs because their service, program, or activity of absentee voting is inaccessible.

150.    As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' Absentee Voting program, they will be unable to vote privately and independently by absentee ballot in the June 23 Primary Election and in all future elections, and in order to vote in person they will be forced to risk their health and safety due to the threat of COVID-19.

151.    In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote by absentee ballot privately and independently in upcoming elections.

152.    Plaintiffs are entitled to injunctive relief and to reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 794, *et seq.*

153.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs, as if alleged herein.

154.    Section 504 of the Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

155.    Section 504 defines "program or activity," in pertinent part, as "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government; or the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" 29 U.S.C. § 794(b)(1).

156.    Such federally funded entities may not, *inter alia,* in providing aids, benefits, or services, "[d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(b)(1)(i).

157.    Such federally funded entities must also "insure that communications with their … beneficiaries are effectively conveyed to those having impaired vision and hearing," 28 C.F.R. § 42.503(e), and, if the entity has 15 or more employees, must "provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills

21

where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(f).

158.    Defendant NYS BOE, an agency or instrumentality of the State of New York, receives federal financial assistance, thereby subjecting itself to the requirements of Section 504. Individual Defendants are sued in their official capacities as those responsible for carrying out the operations of Defendant NYS BOE.

159.    Defendant NYS BOE has 15 or more employees.

160.    Absentee voting, is a service, program, or activity provided by the NYS BOE.

161.    Individual Plaintiffs are people with disabilities under Section 504.

162.    Organizational Plaintiffs NFB-NY, ACBNY, and CIDNY have members who are qualified individuals with disabilities under Section 504.

163.    Organizational Plaintiff DRNY is statutorily authorized to represent individuals with disabilities under Section 504.

164.    Plaintiffs are registered to vote in New York to a party holding a primary election on June 23, 2020 and thus are qualified individuals with disabilities entitled to the protections of Section 504.

165.    Accessible absentee ballot systems are readily available to Defendants and allow independent, private absentee voting for people with print disabilities.

166.    Defendants have failed to meet their obligations to provide voters with disabilities with an opportunity to vote absentee that is equal to the opportunity provided to other voters.

167.    By failing to implement a readily available, accessible absentee voting system, Defendants have refused to provide an auxiliary aid or service necessary to allow Plaintiffs to vote absentee as effectively as voters without disabilities.

168.    During the current pandemic, implementing accessible absentee voting would enable New Yorkers with print disabilities to vote privately and independently without compromising their health or even their lives by risking exposure to COVID-19.

169.    Accordingly, Defendants have discriminated against Plaintiffs because their service, program, or activity of absentee voting is inaccessible.

170.    As a result of Defendants' actions, Plaintiffs have suffered and will continue to suffer irreparable harm: they have suffered and continue to suffer from discrimination and unequal access to Defendants' Absentee Voting program, they will be unable to vote privately and independently by absentee ballot in the June 23 Primary Election and in all future elections, and in order to vote they will be forced to risk their health and safety.

171.    In the absence of injunctive relief, Defendants will continue to deny Plaintiffs their right to vote by absentee ballot privately and independently in upcoming elections.

172.    Plaintiffs are entitled to injunctive relief and to reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request the Court to provide relief as set forth below:

1.    A declaration that Defendants have violated and continue to violate the ADA and Section 504 by failing to provide individuals with print disabilities an accessible means of receiving, marking, and submitting absentee ballots with privacy and independence;

2.    A preliminary and permanent injunction prohibiting Defendants from violating

the ADA and Section 504 and requiring them to offer a private and independent method of

absentee voting that is accessible for Plaintiffs and others with print disabilities in time for use by

voters in the June 23, 2020 elections and in all future elections;

    3.      An award of Plaintiffs' reasonable attorney's fees and costs; and

    4.      Such other and further relief as the Court may deem just and proper.

DATE: May 22, 2020

Brooklyn, NY

By:  /S/ Amanda B. Pearlstein____

Amanda B. Pearlstein
Christina Asbee
DISABILITY RIGHTS NEW YORK
25 Chapel Street, Suite 1005
Brooklyn, NY 11201
Phone:  518-512-4841
Fax:  518-427-6561 (not for service)
Amanda.Pearlstein@drny.org
Christina.Asbee@drny.org

Michelle Caiola
Christina Brandt-Young
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel:  (212) 644-8644
Fax:  (212) 644-8636
mcaiola@dralegal.org
cbrandt-young@dralegal.org

Eve Hill*
Sharon Krevor-Weisbaum*
Brown Goldstein & Levy, LLP
120 E. Baltimore Street, #1700
Baltimore, MD, 21202
Tel.: (410) 962-1030
Fax: (410) 385-0869

EHill@browngold.com
skw@browngold.com
*Pro hac vice* pending

*Attorneys for Plaintiffs*
Baltimore, MD, 21202
Tel.: (410) 962-1030
Fax: (410) 385-0869
EHill@browngold.com
skw@browngold.com
*Pro hac vice* pending

*Attorneys for Plaintiffs*