

# DISABILITY RIGHTS NEW YORK

🌐 www.drny.org     ✉ mail@drny.org     📞 518-432-7861

August 14, 2020

Honorable Lewis J. Liman
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007

Re: *Hernandez et al. v. New York State Board of Elections et al.*, Docket No. 20-cv-4003

Dear Judge Liman:

 The hearing on Plaintiffs' Second Motion for a Preliminary Injunction, ECF No. 55, highlighted that Defendants are unprepared to implement the solution they presented to the Court. Defendants' proposal for accessible absentee voting in the November 3 election is largely similar to the inadequate system used in the June 23 primary. Defendants lack a concrete plan for improving on their performance. They have not taken the first step of instructing the county boards of election ("CBOEs") to remediate their PDF ballots for the November 3 election, much less provided guidance on an appropriate process, quality control, or funding for the remediation. While urging this Court to not disrupt their preparation mid-stream, Defendants admit that no serious preparation has begun. Through their delay, Defendants have left themselves mere weeks to develop and educate the CBOEs on a new, largely untried process to remediate *thousands* of PDF ballots for a hotly contested election likely to see record-breaking absentee turnout.

 The circumstances relayed by Defendants throw into sharp relief the need for New York and its counties to immediately adopt a remote accessible vote-by-mail ("RAVBM") system. An RAVBM system takes administrative load off the counties, can be implemented quickly, and is widely used across the country to provide voters with accessible absentee ballots tested to meet rigorous standards of accessibility. RAVBM tools have been tried, tested, and proven successful for over a decade. There is no need for Defendants to develop a system that already exists, has already been rigorously tested, and has already been used in New York City, the CBOE that serves the largest number of voters in New York.

 Defendants' objections ring hollow in light of the failings of their own proposed process. Defendants' proposed approach has been implemented only twice, both unsuccessfully—in New York and in Michigan. In their papers and at the hearing, they failed to support their claim that their plan will be as effective as an RAVBM and had no response to their duty to give primary consideration to Plaintiffs' requested auxiliary aid. Nor did they offer any detail for their vaguely articulated concerns about security and certification. When pressed, they admitted they could adopt an RAVBM in time.

Defendants' proposal risks depriving voters with disabilities of an independent, private vote on November 3. An RAVBM solution is available and will substantially alleviate that risk. The Court should order Defendants to adopt an RAVBM system for statewide use or to issue a mandatory instruction to the CBOEs to implement their own.

**Defendants' Proposed Solution Will Likely Disenfranchise Voters.**

Defendants have proposed instructing (but have not yet instructed) the CBOEs to work with an unidentified list of PDF accessibility vendors to remediate their ballots in time for the November election. As Thomas Connolly testified at the hearing, there are thousands of different ballots in New York. Each would have to be remediated individually after its creation—there is no way to remediate PDFs in bulk. Presumably, each PDF would also have to be tested to ensure its compatibility with screen-reader software. There are dozens of combinations of screen-readers, web browsers, and operating systems, and each combination must be tested to ensure ballots are accessible to all voters. Groves Decl. ¶ 18, ECF No. 75. While protesting that they lack the capacity to set up an RAVBM tool, Defendants have proposed an extraordinarily work-intensive process for delivering accessible ballots to voters with disabilities. Moreover, they have made no attempt to calculate the actual costs of this process in time, labor, or money, and—as they admitted at the hearing—they do not know whether the counties have the resources to implement their process successfully.

Neither Defendants nor the CBOEs have the expertise to remediate the PDFs or to ensure the quality the work. Defendants instead intend to rely on vendors to both remediate and check the quality of the PDF ballots. As Mr. Connolly admitted, their chosen quality control vendor, Level Access, has no particular expertise in PDF ballot accessibility. Level Access's expertise in fillable forms does not provide adequate reassurance that it has the capacity and skill to carry out appropriate quality control for thousands of ballots. Defendants have repeatedly explained that ballots in New York are unique and complicated documents. The sample ballots attached to Karl Groves' declaration, ECF Nos. 75-3 & 75-4, prove the point that New York's ballots are not simple fillable forms. *See* Groves Decl. ¶ 17 (explaining that New York's ballots have "poor overall usability" which is likely to "have a significantly deeper negative impact for users of assistive technologies"). There is no evidence to suggest that Defendants' vendors understand how to set the reading order and otherwise program such documents so that they clearly convey the information and have the functionality necessary for blind people to vote with confidence.

Nor have Defendants presented any plan from Level Access for quality control. Defendants have not stated whether Level Access intends to test every ballot against all technology combinations or proceed less thoroughly. Remediating each ballot presents many opportunities for error. The CBOE may forget to send the ballot for remediation. The remediator may miss the ballot. The remediator may miss any one of dozens of remediation edits on each ballot. The quality tester may miss a problem or fail to test with one of the dozens of relevant technologies. Defendants have not begun to lay the groundwork to mitigate the high likelihood that human error will be introduced for at least some ballots at some point.

**ALBANY**
725 Broadway, Suite 450
Albany, NY 12207-5001

**BROOKLYN**
25 Chapel St, Suite 1005
Brooklyn, NY 11201

**ROCHESTER**
44 Exchange Blvd, Suite 110
Rochester, NY 14614

TTY: **518-512-3448**
Fax: **518-427-6561**
Toll Free: **1-800-993-8982**

No state has successfully carried out an accessible absentee voting program this way. *See* Hill Decl. Ex. A (status report regarding Michigan's August 4, 2020 primary, showing of 170 accessible pdf ballots requested, voters with disabilities were only able to successfully return 38, or about 22%); Gilbert Decl. ¶ 16, ECF No. 74; Second Blake Decl. ¶¶ 2–6, ECF No. 76. There are PDF remediation experts and there are ballot design experts, but because no state has ever tried Defendants' method, there are no experts in accessible PDF ballot design. Defendants cannot experiment with a home-grown solution at the expense of voters with disabilities.

**RAVBM Systems Have a Proven Track Record of Success.**

Unlike Defendants' solution, RAVBM systems are sound in both theory and practice. RAVBM systems do not rely on remediating inaccessible PDFs. Rather, the vendor produces an accessible HTML ballot from raw ballot style data. Gilbert Decl. ¶ 15; Rebuttal Gilbert Decl. ¶ 6, ECF No. 88; Second Blake Decl. ¶ 6. The ballots are "created and delivered" in a "fully screen-reader compatible" format rather than remediated from an originally inaccessible document. Finney Decl. ¶ 22, ECF No. 92. As Mr. Connolly testified, the ES&S ballot style data used by the state's largest counties can be uploaded to the RAVBM vendor in bulk.[1] Even where data is available in only PDF form, Mr. Connolly testified that Democracy Live need not go painstakingly through thousands of PDFs, remediating them one by one. Its software can "scrape" the PDFs and put the data in accessible formats, the content of which can then be verified. Rather than requiring the state and counties to come up with a quality control plan from scratch, Democracy Live has "built-in quality assurance tools." Finney Decl. ¶ 17.[2]

Democracy Live's RAVBM tool, OmniBallot Online, has been tested against 90 combinations of screen readers, operating systems, and web browsers. Finney Decl. ¶ 14. The ballots the system produces are therefore known to be accessible for every likely voter technology set-up. Thousands of ballots would not need to be accessibility tested individually. OmniBallot Online has been certified by every state with a formal certification process for remote accessible ballot delivery, including California, Ohio, and Florida. Finney Decl. ¶ 12.[3] Delaware last month conducted a secondary security review of OmniBallot Online and determined to proceed with its use.[4] OmniBallot Online is hosted by Amazon's Secure cloud,

---

[1] Counties serving the most voters in the state use ES&S. ES&S AutoMark, New York Board of Elections, https://www.elections.ny.gov/machine-automark.html (last visited Aug. 14, 2020).

[2] Plaintiffs express no preference for a particular RAVBM vendor. They focus primarily on Democracy Live because Defendants take the position that Democracy Live is the only vendor compatible with their election management systems, Connolly Decl. ¶¶ 38–45, ECF No. 78, and because New York City deployed Democracy Live's RAVBM tool for the June 23, 2020 election.

[3] Defendants could not say that New York required such certification, and the fact that New York City used OmniBallot Online in June 23 supports Plaintiffs' understanding that it does not.

[4] Press Release, Del. Dep't Elections, Accessible Voting Available for July 7th Presidential Primary (July 1, 2020), https://news.delaware.gov/2020/07/01/accessible-voting-available-for-july-7th-presidential-primary.

**ALBANY**  
725 Broadway, Suite 450  
Albany, NY 12207-5001

**BROOKLYN**  
25 Chapel St, Suite 1005  
Brooklyn, NY 11201

**ROCHESTER**  
44 Exchange Blvd, Suite 110  
Rochester, NY 14614

TTY: **518-512-3448**  
Fax: **518-427-6561**  
Toll Free: **1-800-993-8982**

AWS, which has be certified for use by the Department of Homeland Security, Department of Defense, Federal Bureau of Investigations, National Security Agency, and other federal security and intelligence agencies. Finney Decl. ¶ 10. It meets all NIST and federal requirements for secure online storage of critical agency data, including ballot data. Finney Decl. ¶ 11.

RAVBM systems have been used by states and local jurisdictions in over 1,000 elections over the past decade. Finney Decl. ¶ 13; *see* Gilbert Decl. ¶ 10; Second Blake Decl. ¶¶ 7–11. Defendants' protests notwithstanding, New York City, which hosts 41% of the state's registered voters,[5] implemented Democracy Live's online portal in 14 days. Finney Decl. ¶ 20. The other counties, while perhaps working with fewer resources, have fewer voters, fewer ballot styles, and a far less daunting task ahead of them in working with an RAVBM to generate accessible ballots.

Disabled NYC voters did not have the perfect primary experience. Most problematically, dozens had difficulty submitting their applications for accessible absentee ballots. These problems were not of Democracy Live's doing. New York City used the state fillable PDF form for such requests; voters did not apply for their ballots through a Democracy Live portal. *See Absentee Voting*, Bd. of Elections in the City of N.Y., https://vote.nyc/page/absentee-voting (last visited Aug. 13, 2020) (click on "Accessible Absentee Application"); *see also* Second Luxton Gourgey Decl. ¶ 10 (describing "emailing the PDF application" to her BOE); Eve Decl. Ex. B, at 5 (showing that Democracy Live offers jurisdictions an optional "Absentee Ballot Request *Portal*" (emphasis added)). While one voter, Karen Luxton Gourgey, had difficulty printing her ballot, she had expected that the ballot would be sent as a PDF file, which was the system the state had announced. Stipulation ¶ 1, ECF No. 37; Second Luxton Gourgey Decl. ¶ 12. Had she known she would need to print directly from the computer she used to fill out the ballot, she likely could have adjusted her computer set-up. And, as counsel for Plaintiffs explained at the hearing, Democracy Live can be configured to allow voters to use a "printer-friendly" button to print their ballot to a PDF, which would have solved Ms. Luxton Gourgey's problem. Luxton Gourgey Decl. ¶ 12. This was primarily a problem of communication between the City and Democracy Live and the state and its voter, not technology. Screen-reader users nationwide report few problems with RAVBMs as a whole. Blake Decl. ¶ 27, ECF No. 61.

**Defendant's Solution Is More Complicated, More Costly, and Less Effective Than an RABVM.**

An RAVBM tool offers Plaintiffs and their members the best opportunity to cast a private and independent vote. This solution has been vetted in other elections and certified by every state with a relevant certification process. It has built-in accessibility and quality control mechanisms

---

[5] New York tracks voter registration data by "Outside NYC" and "Within NYC." *NYSVoter Enrollment by County, Party Affiliation and Status: Voters Registered as of February 21, 2020* (downloaded Aug. 13, 2020, from https://www.elections.ny.gov/EnrollmentCounty.html).

ALBANY
725 Broadway, Suite 450
Albany, NY 12207-5001

BROOKLYN
25 Chapel St, Suite 1005
Brooklyn, NY 11201

ROCHESTER
44 Exchange Blvd, Suite 110
Rochester, NY 14614

TTY: **518-512-3448**
Fax: **518-427-6561**
Toll Free: **1-800-993-8982**

that dramatically streamline the time and effort needed to ensure proper, working ballots. OmniBallot Online holds itself to the same security standards used by federal security agencies.[6]

Remediating thousands of PDFs one at a time presents none of these advantages. Every problem Defendants have identified with RAVBM tools is shared or exacerbated in the process they propose. Voters will still have to print their ballots. The system Defendants propose is no less novel for the counties to learn than voting by RAVBM, and Defendant's in-house system requires a greater role for the counties in quality control and, depending on the configuration of the RAVBM system, as intermediaries between the ballot and the voter.

Mr. Connolly emphasized that counties have to send data or PDFs to the RAVBM vendors, but they must similarly send their PDF ballots to the remediation vendors. In the counties using ES&S, Mr. Connolly testified that data can be transferred efficiently. The same time constraints apply to the PDF ballots as Defendants point to with the RAVBM—accessible ballots cannot be produced until ballots are certified, and piecemeal remediation is likely to take significantly longer than an RAVBM system. Defendants cannot claim that their system is cheaper, because they have not quantified the cost of either process. In Michigan, Democracy Live will cost the state $1,875,000 ($375,000 per year) over five years.[7] Defendants have given the Court no information by which to judge the burden of costs of this scale on their resources.

In the end, Defendants' arguments are built on speculation. They speculate that an RAVBM will be difficult and expensive to implement; that it might have unspecified security flaws; and that their proposed system might perform just as well with instructions they have yet to set forth. Speculation cannot carry Defendants' burden. Plaintiffs have the facts: the fact that RAVBMs have worked in thousands of elections for years; that they are certified and held to high security standards; that Defendants' system did not work in June; and nothing has changed to allow the Court to have confidence it will work today.

For the forgoing reasons, Plaintiffs respectfully request the Court grant their Motion for a Preliminary Injunction.

Sincerely,

Abigail Graber
Co-counsel for Plaintiffs

---

[6] If permitted, it can even permit electronic return of completed ballots without the need for printing or downloading. While Plaintiffs do not demand implementation of this option through the preliminary injunction for November, they do seek it as part of their Complaint.

[7] Michigan, with 83 counties, has stated in court that "Michigan's system is one of the most decentralized elections systems in the nation, Hill Decl. Ex. C, ¶ 4., and, unlike New York, its largest counties had not already implemented an RAVBM.

ALBANY
725 Broadway, Suite 450
Albany, NY 12207-5001

BROOKLYN
25 Chapel St, Suite 1005
Brooklyn, NY 11201

ROCHESTER
44 Exchange Blvd, Suite 110
Rochester, NY 14614

TTY: 518-512-3448
Fax: 518-427-6561
Toll Free: 1-800-993-8982