UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSE HERNANDEZ; KEITH GURGUI; RASHETA BUNTING; KAREN LUXTON GOURGEY; DISABILITY RIGHTS NEW YORK; NATIONAL FEDERATION OF THE BLIND OF NEW YORK STATE, INC.; AMERICAN COUNCIL OF THE BLIND OF NEW YORK, INC.; and CENTER FOR INDEPENDENCE OF THE DISABLED, NEW YORK, | CASE NO: 1:20-cv-4003 <br><br> **SETTLEMENT AGREEMENT AND [PROPOSED] ORDER** |

                Plaintiffs,

  -against-

THE NEW YORK STATE BOARD OF
ELECTIONS, DOUGLAS A. KELLNER,
Co-Chair and Commissioner, ANDREW
SPANO, Commissioner, PETER S.
KOSINSKI, Co-Chair and Commissioner,
TODD D. VALENTINE, Co-Executive
Director, and ROBERT A. BREHM, Co-
Executive Director, in their official capacities
at the New York State Board of Elections,

                Defendants.

---

      This SETTLEMENT AGREEMENT AND [PROPOSED] ORDER ("Settlement

Agreement") is made by and between Plaintiffs Jose Hernandez; Keith Gurgui; Rasheta Bunting;

Karen Luxton Gourgey; Disability Rights New York; National Federation Of The Blind Of New

York State, Inc.; American Council Of The Blind Of New York, Inc.; and the Center For

Independence Of The Disabled, New York ("Plaintiffs") and Defendants the New York State

Board of Elections; Douglas A. Kellner, Co-Chair And Commissioner; Andrew Spano,

Commissioner; Peter S. Kosinski, Co-Chair And Commissioner; Todd D. Valentine, Co-

DocuSign Envelope ID: 62882A11-277D-42A4-BAB5-3E0519155AB3

Executive Director; and Kristen Zebrowski Stavisky, Co-Executive Director, in their official capacities at the New York State Board of Elections ("Defendants")[1]  (collectively, "the Parties"), as follows:

**WHEREAS**, Plaintiffs filed a Complaint dated May 22, 2020 (Dkt. 1), alleging that Defendant New York State Board of Elections ("SBOE")'s absentee voting program is inaccessible to individuals with disabilities and therefore in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794 (the "Action"); and

**WHEREAS,** on May 27, 2020, SBOE adopted a number of measures toward improving access to absentee ballots; and

**WHEREAS,** the Parties agreed on June 6, 2020 to a Stipulated Settlement resolving the issues raised in Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order ("PI/TRO Motion") regarding the June 23, 2020 Elections (Dkt. 38), and were on August 19, 2020, bound by a court order relating to the November 3, 2020 General Election (Dkt. 110); and

**WHEREAS,** this Settlement Agreement is intended to wholly resolve the Action, identified above, between the Parties without further expense, delay, and the risks and uncertainties of trial; and

**WHEREAS,** the Parties intend this Settlement Agreement, in addition to obviating the need for further litigation, to finalize the shared goal of the Parties in creating and implementing a more accessible absentee voting program;

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kristen Zebrowski Stavisky is automatically substituted for former Co-Executive Director Robert A. Brehm as a Defendant in this case.

DocuSign Envelope ID: 62882A11-277D-42A4-BABF-3E0519155AB3

**NOW, THEREFORE, IT IS STIPULATED, AGREED, AND ORDERED AS FOLLOWS**:

## I.      DEFINITIONS

1.   The following terms as used in this Settlement Agreement shall be defined as follows:

a.   "Accessible Forms" mean forms, applications, *ballots, or transactions that are electronically fillable and submittable,* produce a savable confirmation of submission for users, are provided in an HTML format option, and are compliant with WCAG 2.1 AA or, where WCAG 2.1 AA cannot be procured, are compliant with WCAG 2.0 AA, but nothing in this Settlement Agreement shall require SBOE or any County Boards of Election to accept any ballots via an electronic ballot return system during the term of this Settlement Agreement.

b.   "Ballot Data Information" means the raw data to produce a sample ballot.

c.   "County Boards of Elections ('CBOEs')" means the 58 county agencies in New York State responsible for voter registration and administration of elections within their respective jurisdictions.

d.   "Eligible Voter" means an individual who meets the New York State voting eligibility requirements.

e.   "HTML Webform" means a form on a webpage that allows a user to enter data that creates a completed form that can be printed.

f.   "Plaintiffs" means the Plaintiffs in the above-captioned action.

g.   "Print Disability" means any disability that interferes with the effective reading, writing, or use of printed material.

h. "Remote Accessible Vote-by-Mail ('RAVBM') system" means an electronic system that allows voters with a disability to mark a ballot privately and independently using their own assistive technology, download a ballot, print their marked ballot, and mail it to their CBOE to be canvassed and counted.

i. "SBOE" means the Defendant State Board of Elections, the New York State agency created pursuant to New York State Election Law § 3-102.

2. Unless otherwise provided in this Settlement Agreement or by common understanding in context, technical terms used in this Settlement Agreement have the same meaning as provided in the Web Content Accessibility Guidelines ("WCAG") 2.1 published by the World Wide Web Consortium ("W3C"), *available at* www.w3.org/TR/WCAG.

## II.    REQUIREMENTS

3. SBOE shall, by June 1, 2022, develop, test, and implement an accessible, electronic method by which voters with a Print Disability across New York State may request, receive, and mark an accessible absentee ballot electronically via an RAVBM system as provided for in this Settlement Agreement from their CBOE. This Settlement Agreement applies to elections on or after June 1, 2022 conducted by CBOEs.

a. SBOE will share any forms related to the RAVBM process and a description of the RAVBM system and processes with Plaintiffs for comment prior to implementation, on a rolling basis to the extent possible and as soon as reasonably practicable.

b. SBOE agrees to consider in good faith any comments or modifications suggested by Plaintiffs.

DocuSign Envelope ID: 62882A11-277D-42A4-BAB5-3E0519155AB3

4.  By May 15, 2022, SBOE shall identify and publicize on its website the name and contact information of a SBOE staff member(s) to provide technical assistance to CBOEs and to voters attempting to request, mark, or return accessible absentee ballots.

5.  SBOE shall ensure that the RAVBM system is fully accessible and in compliance with WCAG 2.1 AA, or, if WCAG 2.1 AA compliant modalities cannot be reasonably procured, is in compliance with WCAG 2.0 AA.

6.  SBOE shall ensure that educational ballot information generated from ballot data information will be provided in an accessible, WCAG 2.1 AA-compliant format – or, where WCAG 2.1 AA cannot reasonably be achieved, in a format compliant with WCAG 2.0 AA – on the SBOE website.

7.  SBOE shall educate all CBOEs on the RAVBM system and the process by which voters with a Print Disability may request, receive, mark, and return accessible absentee ballots. Specifically, SBOE agree to the following:

a.  Within 30 days of the date that the Court "so orders" this Settlement Agreement and dockets same on the Court's Electronic Filing System, SBOE shall provide the CBOEs with copies of this Settlement Agreement along with detailed instructions on what the CBOEs must do to implement the relevant terms of this Settlement Agreement.

b.  SBOE shall provide a mandatory training session on accessible absentee ballots to all CBOEs each year this Settlement Agreement is in effect wherein it will explain this Settlement Agreement and the processes for compliance with it.

c.  At least 60 days prior to each CBOE-run primary or general election that takes place during the term of this Settlement Agreement, SBOE shall communicate with each

CBOE to obtain certification in writing from the CBOE that it is aware of and in compliance with the relevant terms of this Settlement Agreement.

d.  SBOE shall share with Plaintiffs, prior to implementation, the materials to be utilized for training required by this Settlement Agreement, and shall consider in good faith any comments or modifications suggested by Plaintiffs.

8.  SBOE shall create and implement, for use by June of 2022, a centralized, uniform statewide process for voters to request an accessible absentee ballot through the SBOE website.

a.  SBOE agrees to, by May 1, 2022, make available a statewide portal request system through which a voter with a Print Disability can make a request via accessible HTML fillable form that will be transmitted promptly to the voter's CBOE for processing, so long as such an absentee portal is required under New York State law. This provision shall not apply with respect to any jurisdiction that provided its own portal in 2020, provided such jurisdiction continues to do so.

b.  SBOE shall issue a directive requiring CBOEs to link to this centralized request process on their websites in an accessible public-facing location on either the CBOE home page or its absentee ballot subpage.

c.  In addition to Subsection 8(a), SBOE agrees that voters must have available the following options to submit an accessible absentee ballot request form to each respective CBOE: by United States mail, web portal, fax, or email, to the extent these method are available to all absentee voters pursuant to New York State law.

d.  SBOE agrees that voters may submit an electronic request for an accessible absentee ballot at any time up until fifteen (15) days prior to a primary election or general

election, or within the time frame established by New York State or federal law for the submission of absentee ballot requests by methods other than in person.  If New York State law changes the deadline for absentee ballot requests for all absentee voters, or the methods by which those requests must be submitted, such change in law shall supersede this subparagraph.

9.  SBOE agrees to the following regarding the delivery and return of accessible absentee ballots:

a.  For all elections held in 2022, CBOEs will provide eligible voters who request an accessible absentee ballot a postage-paid ballot return envelope and oath envelope by mail at least fifteen days (15) prior (subject to 8(d) above) to a primary election or general election. Postage paid envelopes thereafter, as applicable, will be provided at any election where postage paid envelopes are provided to all absentee voters.

b.  For the June 2022 election and elections held thereafter, oath envelopes must include tactile markers designating where the voter should sign. However, CBOEs will be instructed to accept signatures anywhere on the envelope.

c.  CBOEs will provide an accessible electronic version of the oath envelope, accessible instructions on how to return the ballot, and a return envelope template that can be printed by the voter to all eligible voters who request an accessible absentee ballot. Plaintiffs agree that the versions of these envelopes provided by the SBOE for the 2020 elections met the accessibility requirements of this subparagraph.

d.  The attestation on the accessible absentee ballot oath envelope will be the same as the attestation on the paper ballot oath envelope for all voters.

e.  Upon completion of the ballot, the voter may return the printed accessible absentee ballot using the United States Postal Service or hand delivery to their CBOE, or by any other method the CBOE provides for the return of absentee ballots if such other method is applicable pursuant to state law.

f.  Submission and postmark deadlines for accessible absentee ballots shall be the same as for other absentee ballots.

10. SBOE shall, to the extent practicable, provide on the SBOE website, and shall instruct the CBOEs to provide on their respective websites, information for voters who are utilizing the accessible absentee ballot system on where they can access printers in order to print their ballots, and instructions for accessing county-based resources for printing. SBOE and CBOEs shall also provide the information that voters with a disability will still be able to vote in-person using an accessible Ballot Marking Device ("BMD"), either during early voting or on Election Day.

11. SBOE shall, for all state and local elections run by CBOEs occurring prior to June 1, 2022, continue at minimum to provide via email an accessible fillable PDF absentee ballot ("accessible PDF ballot") or accessible HTML ballot, to eligible voters who have a print disability and request an accessible absentee ballot. SBOE will implement these accessible ballots according to the processes set forth in Paragraph 11 of the June 2, 2020 Stipulation of Settlement (Dkt. 38; "Stipulation") and Paragraph 1 of the August 18, 2020 Order (Dkt. 110; "Order"), including the following:

a.  SBOE agrees that upon receipt of a voter's request for an accessible absentee ballot, CBOEs or their agents will, pursuant to mandatory directive of the SBOE, generate a ballot that is screen readable using common assistive technology, such as Job

DocuSign Envelope ID: 62082A11-277D-42A4-BAB5-2E0519155AB3

Access with Speech "JAWS" software, Apple VoiceOver, and Android TalkBack, which shall include insertion of tags and fillable objects so that it can be completed independently and privately by the requesting individual using standard, accessible technology, namely a screen-reader program. The accessible absentee ballot shall meet WCAG 2.1 AA standards for a PDF, or, if WCAG 2.1 AA cannot be procured, WCAG 2.0 AA standards.

b. An accessible absentee ballot may also include, for a CBOE that provided an accessible ballot in a web-based format (such as a fillable HTML) for the June 23, 2020 or November 3, 2020 election, the use of the same such accessible ballot in a web-based format for elections taking place subsequent to the implementation of this agreement but prior to June 1, 2022. This will be done subject to consultation with the SBOE Technology and Election Operations staff and upon resolution of any issues with such accessible ballot in a web-based format.

12. Plaintiffs agree not to file litigation challenging any alleged failure by SBOE to permit Plaintiffs or their members to return accessible absentee ballots electronically during the term of this Settlement Agreement.

a. This Settlement Agreement does not preclude the SBOE and CBOEs from implementing an electronic ballot return system during the term of this Settlement Agreement.

13. The term of this Settlement Agreement shall begin on the date a "so ordered" Settlement Agreement is docketed on the Court's Electronic Filing System, and shall end on May 31, 2025.

14. SBOE shall, within 45 days after each election certification for the term of this Settlement Agreement, provide Plaintiffs with a report for the preceding election containing the following information, by CBOE:

a. The number of voters who requested an accessible absentee ballot;

b. The number of accessible absentee ballots provided by the CBOE;

c. The number of accessible absentee ballots received by the CBOE;

d. The number of accessible absentee ballots rejected by the CBOE and the reasons for their rejection;

e. The number of accessible absentee ballots counted by the CBOE; and

f. Categorical descriptions of complaints or feedback received by election officials at the county or state level, from voters or any source assisting a voter in making a complaint (i.e. Independent Living Centers, advocates, schools, aides, etc.), regarding attempts to use or use of the accessible absentee ballot, along with descriptions of how complaints were resolved.

15. SBOE agrees to publish the following:

a. This Settlement Agreement and a summary of its terms by Press Release, and on the SBOE website within 30 days after docketing of this Settlement Agreement as "so ordered" by the Court; and

b. Announcement of the RAVBM accessible absentee ballot program SBOE implements state-wide in a Press Release and on the SBOE website by June 1, 2022; and

c. Announcement of updates that create substantial changes to the RAVBM system in timely Press Releases and on the SBOE website.

## III.     ATTORNEY'S FEES AND COSTS

16. **Payments to Plaintiffs and Plaintiffs' Attorneys**

In full consideration of Plaintiffs' execution of this Settlement Agreement, their agreement to be bound by its terms, and their undertakings as set forth herein, including the final resolution of the Action, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the State of New York, on behalf of the Defendants, shall pay the gross sum of FOUR HUNDRED THOUSAND DOLLARS ($400,000.00), for which I.R.S. Form 1099 shall be issued to Plaintiffs' attorneys in this amount, in full and complete satisfaction of any and all claims, allegations, or causes of action for attorneys' fees, costs, disbursements, and expenses incurred by Plaintiffs or Plaintiffs' attorneys for any and all counsel who have at any time represented or assisted Plaintiffs in the Action, or in connection with any other proceeding (administrative, judicial, or otherwise) and any other claim or action arising from, related to, based upon, or alleging any of the acts, transactions, occurrences, or omissions asserted or purportedly asserted in the Action. The foregoing payment shall be made payable to: "Brown Goldstein & Levy, LLP, and mailed to Brown, Goldstein & Levy, LLP, 120 E. Baltimore St., Suite 2500, Baltimore, MD 21202.

17. **State Approval of Payments**

The payments referenced in Paragraph 16 of this Settlement Agreement are conditioned upon and subject to the approval of all appropriate state officials in accordance with N.Y. Public Officers Law § 17, and approval will not be unreasonably withheld. Plaintiffs and Plaintiffs' attorneys agree to promptly execute and deliver all necessary and appropriate vouchers and other documentation requested with respect to obtaining such approval and effectuating payment.

18. **Accrual of Interest**

In the event that the payments referenced in Paragraph 16 of this Settlement Agreement have not been made by the one hundred twentieth (120th) day after the receipt by the Office of the Attorney General of a "So Ordered" copy of this Settlement Agreement, entered on the docket by the Clerk of the Court, together with all other requested documentation required under Paragraph 17 of this Settlement Agreement, interest on any part of the sum not paid by the end of the one hundred twentieth (120th) day shall accrue on the outstanding principal balance at the statutory rate prescribed by 28 U.S.C. § 1961, commencing on the one hundred and twenty-first (121st) day after receipt by the Office of the Attorney General of all documentation required under Paragraph 17 of this Settlement Agreement.

19. **Liability for Taxes**

Any taxes, or interest or penalties on taxes, on the payments referenced in Paragraph 16 of this Settlement Agreement shall be the sole and complete responsibility of Plaintiffs and their attorneys for fees paid to said attorneys. Plaintiffs and their attorneys agree and acknowledge that they shall have no claim, right, or cause of action against Defendants and/or the State of New York, or any of their present or former agencies, departments, divisions, officers, employees, agents, attorneys, and assigns, whether in an individual or official capacity, or any of them, or all of them, on account of such taxes, interest, or penalties.

20. **Responsibility for Liens.**

Plaintiff and Plaintiff's attorneys agree that neither the Defendants, nor the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof and any of its officials, employees, or agents, whether in their individual or official

DocuSign Envelope ID: 62982A11-2778-42D4-BAB5-2E0510155A53

capacities) shall be responsible for any liens of any kind (including, but not limited to, any and all workers' compensation, tax, or child support liens) which may attach to the payments referenced in Paragraph 16 of this Settlement Agreement by operation of law or otherwise. Plaintiffs and Plaintiffs' attorneys agree and acknowledge that they shall have no claim, right, or cause of action against Defendants and/or the State of New York (including, but not limited to, any and all agencies, departments, and subdivisions thereof and any of its officials, employees, or agents, whether in their individual or official capacities) for the satisfaction of any such liens.

21. **Release in Favor of Defendants**

For and in consideration of the agreements set forth in this Settlement Agreement and other good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, and except for the rights and obligations set forth in this Settlement Agreement, Plaintiffs, on behalf of themselves, administrators, successors, and assigns (collectively, "Releasing Parties"), hereby release and forever discharge the Defendants and the State of New York, together with their present and former agencies, authorities, commissions, departments, divisions, subdivisions, subsidiaries, administrators, principals, officers, employees, directors, members, agents, attorneys, insurers, and assigns, whether in an individual or official capacity, or any of them, or all of them (collectively, "Released Parties") from all manner of actions, proceedings, suits, grievances, injuries, debts, obligations, dues, sums of money, accounts, contracts, controversies, agreements, promises, damages, judgments, claims, and demands whatsoever, direct or indirect, known or unknown, discovered or undiscovered, that the Releasing Parties incurred in connection with the Action up to and including the date of this Settlement Agreement related to any and all

rights, claims, causes of action, grievances related to or arising out of the acts, transactions, occurrences, or omissions that are described, alleged, or contained in the Action. Plaintiffs are not waiving or releasing any nonwaivable statutory protections or any constitutional rights.

22. **No Other Action or Proceeding Commenced.**

Other than the Action, Plaintiffs represent that they have not commenced, maintained, or prosecuted any action, charge, complaint, grievance, or proceeding of any kind that is still pending against the Released Parties that would be subject to the release contained in Paragraph 21, on their own behalf or on behalf of any other person and/or on behalf of or as a member of any alleged class of persons, that none of the foregoing is currently pending in any court or before any administrative or investigative body or agency, and acknowledges that this representation constitutes a material inducement for Defendants to enter into this Settlement Agreement.

23. **Waiver of Attorneys' Lien**

The undersigned attorneys for Plaintiffs do hereby release and waive any attorneys' lien they may have on the settlement proceeds in the Action pursuant to N.Y. Judiciary Law §§ 475 and 475-a or any other state or federal law, statute, contract, or otherwise.

24. **No Other Attorney**

Plaintiffs represent and warrant that besides the undersigned attorneys for Plaintiffs, there are no other attorneys that have a lien on the settlement proceeds in the Action pursuant to the provisions of N.Y. Judiciary Law §§ 475 and 475-a or any other state or federal law, statute, contract, or otherwise.

25. **Authority**

Each signatory to this Settlement Agreement hereby represents and warrants that he, she, it has the requisite authority to enter into this Settlement Agreement, and has not previously assigned or transferred any rights or interests with respect to the matters covered by this Settlement Agreement.

26. **Voluntary Agreement**

Plaintiffs represent that they have thoroughly discussed with counsel all aspects of this Settlement Agreement, and Plaintiffs represent that they have carefully read and fully understand all of the provisions of this Settlement Agreement. Plaintiffs represent that they execute and deliver this Settlement Agreement voluntarily after being fully informed of its terms, contents, and effect, and acknowledge that they understand its terms, contents, and effect. Plaintiffs acknowledge that no compromise or representation of any kind, other than as set forth or referred to herein, has been made to any party or anyone acting on behalf of any party.

27. **Negotiated Agreement**

The Parties acknowledge that each party has cooperated in the drafting and preparation of this Settlement Agreement.  The language in all parts of this Settlement Agreement shall be construed according to its fair meaning and not strictly for or against any party.

28.  **Entire Agreement**

This Settlement Agreement constitutes the entire agreement between the Parties hereto pertaining to the Action, and supersedes and embodies, merges and integrates all prior and current agreements and understandings of the Parties, whether written or oral, with

respect to the Action and this Settlement Agreement, and may not be clarified, modified, changed, or amended except in a writing duly executed by the Parties or an authorized representative of the Parties.

### 29. **Governing Law**

The terms of this Settlement Agreement shall be governed by, and construed in accordance with, the laws of the State of New York applicable to contracts to be performed wholly within the State of New York, except to the extent that federal law may apply to the releases and waiver of federal claims pursuant to this Settlement Agreement.

### 30. **Severability**

With the exception of paragraphs 12, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28 and 29 of this Settlement Agreement, if any other provision of this Settlement Agreement shall be held by a court of competent jurisdiction to be invalid, void, or unenforceable in whole or in part, or if new state or federal laws are enacted or new federal or state regulations are promulgated which negate or invalidate any provision of this Settlement Agreement, such decision, enactment or promulgation shall not invalidate the remaining portion or affect its validity.

### 31. **Headings**

The headings contained in this Settlement Agreement are for convenience of reference only and are not a material part of this Settlement Agreement.

## IV.   **OTHER TERMS**

32. The Parties agree to resolve any disputes related to this Settlement Agreement in the following manner:

a. SBOE will provide one or more point(s) of contact at the SBOE for Plaintiffs to contact regarding compliance issues by the CBOEs during the term of this Settlement Agreement.

b. Plaintiffs shall make a notification of non-compliance in writing to the SBOE, which can include an email, to the designated point of contact(s).

c. The SBOE shall take all reasonable steps to work with the CBOE alleged to be not in compliance, to remedy the issue promptly and shall keep Plaintiffs duly apprised of such efforts.

d. After notifying the SBOE of a dispute or non-compliance to this Settlement Agreement, Plaintiffs shall not take further legal action for at least four days. However, in the event that Plaintiffs are unable to notify the SBOE within four days of primary election or general election, Plaintiffs may take action immediately, but in any event no later than three days before the primary election or general election. If, upon the expiration of that period, Plaintiffs determine that the CBOE has been unable to remediate the issue, or will not timely remedy the issue complained of, Plaintiffs may notify the Court in this Action of such issue and seek a judicial remedy.

e. In the event a dispute is brought before the Court pursuant to this paragraph, nothing in this agreement shall preclude any party from seeking their reasonable attorney's fees and costs concerning such dispute to the extent available.

33. In the event it becomes impossible or impracticable for SBOE to implement a RAVBM system on or before June 1, 2022, CBOEs shall continue to provide PDF or HTML ballots as provided for herein until such time as the RAVBM system is implemented.  If SBOE cannot meet the June 1, 2022 deadline for implementation provided for in Paragraph 3 of this

Settlement Agreement, SBOE shall provide Plaintiffs, by and through their respective counsel, a detailed explanation for such delay and shall state the date by which the rollout of RAVBM is expected to be accomplished, which date shall be the earliest date possible.

34. Disputes shall be resolved in a manner consistent with paragraph 32 of this Settlement Agreement. The parties shall meet and confer in good faith to resolve any dispute arising under this Settlement Agreement prior to submitting any dispute to the Court for resolution. The parties agree that this action shall be dismissed pursuant to Federal Rule of Civil Procedure 41(a)(2), but the Court shall retain jurisdiction to enforce this Settlement Agreement and to resolve any disputes arising thereunder during the term of this Agreement.

35. This Agreement is being executed in one or more counterparts, each of which shall be deemed an original and all of which together constitute one and the same instrument, and photographic copies of such signed counterparts may be used in lieu of the original. Electronic signatures shall be deemed to be as valid and enforceable as original ink signatures.

Dated:  March   , 2022

Jose Hernandez

Keith Gurgui

Rasheta Bunting

DocuSign Envelope ID: 62982A11-2778-42A4-BAB5-2E0510155A53

Karen Luxton Gourgey

Disability Rights New York

National Federation the Blind of New York State, Inc.

American Council of the Blind of New York, Inc.

Center for Independence of the Disabled, New York

**Counsel:**

Christina Asbee
DISABILITY RIGHTS NEW YORK
279 Troy Rd, Ste. 9
PMB 236
Rensselaer, NY 12144
Tel:  (518) 432-7861
Fax:  (518) 545-6869

Christina Brandt-Young
DISABILITY RIGHTS ADVOCATES
655 Third Avenue, 14th Floor
New York, NY 10017
Tel:  (212) 644-8644
Fax:  (212) 644-8636
cbrandt-young@dralegal.org

Eve Hill

Eve Hill
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, #2500
Baltimore, MD 21202
Tel:  (410) 962-1030
Fax:  (410) 385-0869
EHill@browngold.com

*Attorneys for Plaintiffs*


NEW YORK STATE BOARD OF ELECTIONS

By: Todd D. Valentine

Todd D. Valentine, Co-Executive Director
Todd.Valentine@elections.ny.gov


By:

Kristen Zebrowski Stavisky, Co-Executive Director
Kristen.Zebrowski.Stavisky@elections.ny.gov

New York State Board of Elections
40 North Pearl Street – Floor 5
Albany, NY 12207
Tel:  (518) 474-6367


LETITIA JAMES
Attorney General, State of New York

*Attorney for Defendants*


By: Seth J. Farber

Seth J. Farber
Assistant Attorney General
28 Liberty Street
New York, NY 10005
Tel:  (212) 416-8029
Seth.Farber@ag.ny.gov

**SO ORDERED:**

_____

Hon. Lewis J. Liman
United States District Judge

Dated: New York, New York
      March   , 2022